UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FLOYD ARMBRESTER,<br><br>        Plaintiff,<br><br>    v.<br><br>ALAMEDA COUNTY,<br><br>        Defendant. | Case No. 17-cv-05231-LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 38 |

## INTRODUCTION

In the fall of 2015, plaintiff Floyd Armbrester was detained for several hours at the Glen Dyer jail in Oakland. Mr. Armbrester, who is wholly blind and suffers from physical impairments, brings a claim under Title II of the Americans with Disabilities Act (ADA) against Alameda County, which operates the Glen Dyer facility, alleging that the County failed to reasonably accommodate his disabilities. The County moved to dismiss, and the court held a hearing on August 23, 2018.

Mr. Armbrester does not plead that he was excluded from participation in or denied the benefits of the County's services, programs, or activities, or that the County otherwise discriminated against him by reason of his disabilities. Mr. Armbrester therefore does not meet the requirements for pleading an ADA Title II claim. The court dismisses Mr. Armbrester's complaint, with leave to amend.

# STATEMENT[1]

United States District Court
Northern District of California

Plaintiff Floyd Armbrester is wholly blind and suffers from severe physical impairments, including having steel rods implanted in his arms, a detached finger, and traumatic brain injury.[2] On September 9, 2015, Mr. Armbrester was arrested by the Berkeley City Police and taken to the Berkeley City jail.[3] The circumstances surrounding Mr. Armbrester's arrest and his treatment at the Berkeley City jail are not at issue in this case.[4]

At some point after Mr. Armbrester's arrest, the Alameda County Sheriff's Department picked him up and took him to the Glen Dyer jail in Oakland.[5] Upon arriving at the Glen Dyer jail, the Sheriff's Department initially placed Mr. Armbrester with the general jail population and not in a holding cell designed to accommodate a person with his disabilities.[6] Mr. Armbrester asked not to be placed in general population, due to his being blind and vulnerable.[7] Mr. Armbrester was detained at the Glen Dyer jail for several hours.[8] The SAC does not plead whether Mr. Armbrester was detained in general population during those hours, as opposed to being moved and detained somewhere else (e.g., an individual holding cell) after he asked not to be placed in general population.[9]

Mr. Armbrester was not provided a blind cane while he was being detained at the Glen Dyer jail.[10] Mr. Armbrester alleges that as a result, he hurt his legs as he tried to navigate his cell in

---

[1] Unless otherwise noted, the facts recited in the Statement are allegations from the Second Amended Complaint ("SAC").

[2] SAC – ECF No. 37 at 2 (¶ 5). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.* at 2–3 (¶¶ 5–14).

[4] Mr. Armbrester's interactions with the Berkeley City Police were the subject of another case in this district that is now closed. *Armbrester v. City of Berkeley*, No. 3:16-cv-04615 (N.D. Cal. filed Aug. 12, 2016) (*Armbrester I*).

[5] SAC – ECF No. 37 at 4 (¶ 15).

[6] *Id.* (¶ 17).

[7] *Id.* (¶ 18).

[8] *Id.* (¶ 19).

[9] *See id.*

[10] *Id.* at 5 (¶ 23).

order to try to access the phone.[11] The SAC does not plead whether Mr. Armbrester was able to access the phone and make any calls or not.[12]

After several hours, the charges against Mr. Armbrester were dropped and he was released.[13]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

---

[11] *Id.* (¶ 24).

[12] *See id.*

[13] *Id.* at 4 (¶ 19).

United States District Court
Northern District of California

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Governing Law

Title II of the ADA, 42 U.S.C. § 12131 et seq., prohibits discrimination on the basis of a disability in the programs, services, or activities of a public entity. Federal regulations generally require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

The elements of an ADA Title II claim are: (1) "[the plaintiff] is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (some internal quotation marks omitted) (quoting *Duvall v. City of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)). "This provision extends to discrimination against inmates detained in a county jail." *Id.* (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

A plaintiff must allege what services the defendant denied him. *See Wright v. TNDC*, No. 18-CV-02196-LB, 2018 WL 2215916, at *2 (N.D. Cal. May 14, 2018) (dismissing complaint where plaintiff did not allege what services the defendants denied him); *accord Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018) (general allegations that defendants do not evaluate or accommodate individuals with visual disabilities is insufficient to show how plaintiff was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity").

The ADA is not a public-safety statute. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). "[T]he ADA was not designed to protect those with disabilities from personal injuries . . . . Indeed, 42 U.S.C. § 12101(b) expressly states that the purpose of the ADA is 'the elimination of discrimination against individuals with disabilities.' . . . There was no mention of promoting safety or eliminating hazards in the Act[.]" *Levin v. Dollar Tree Stores, Inc.*, No. 06-00605, 2006 WL 3538964, at *3 (E.D. Pa. Dec. 6, 2006) (some internal quotation marks omitted) (quoting *White v. NCL Am., Inc.*, No. 05-22030-CIV, 2006 WL 1042548, at *5 (S.D. Fla. Mar. 8, 2006)). "'[W]hile protection from injury for the disabled is no doubt a fortunate by-product of the ADA, it is clear that the statute was not designed with that purpose in mind[.]" *Hunter ex rel. A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. 2014) (quoting *White*, 2006 WL 1042548, at *5).

Compensatory damages are not available under Title II of the ADA absent a showing of discriminatory intent. *Updike*, 870 F.3d at 950 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)). "To show intentional discrimination, this circuit requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood.'" *Id.* at 950–51 (ellipsis omitted) (quoting *Duvall*, 260 F.3d at 1139). "'When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.'" *Id.* at 951 (quoting *Duvall*, 260 F.3d at 1139). "To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and [must] involve[] an element of deliberateness.'" *Id.* (quoting *Duvall*, 260 F.3d at 1139).

Punitive damages may not be awarded in suits brought under Title II of the ADA. *Barnes v. Gorman*, 536 U.S.181, 189 (2002).

## 2. Application

Mr. Armbrester seeks only compensatory and punitive damages, plus attorney's fees, not injunctive relief.[14] The deliberate-indifference standard therefore applies to his claims.

Mr. Armbrester does not cognizably allege what services were denied to him, much less that the County denied him the benefits of these services by reason of his disabilities or did so out of deliberate indifference.

First, Mr. Armbrester alludes to the fact that he was initially placed in with the general jail population when he first arrived at Glen Dyer. He then "begged" not to be placed in general population. He does not allege what happened after he made this request, however: he does not allege that the County was deliberately indifferent to his request to not be placed in general population or allege that he remained in general population after he made that request.[15] This does not plead an ADA Title II claim.

Second, Mr. Armbrester claims that the County did not give him a blind cane to navigate his cell and, as a result, he injured his legs as he tried to navigate the cell without a cane. But "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022. The fact that the County might have failed to give Mr. Armbrester a blind cane or protect him from injury does not plead that Mr. Armbrester was discriminated against by reason of his disabilities. This does not plead an ADA Title II claim.

Third, Mr. Armbrester alludes to attempts to access a phone to use. He does not allege that he was unable to use the phone, however, and therefore does not allege that he was denied the benefits of any services. This does not state an ADA Title II claim.

---

[14] SAC – ECF No. 37 at 6.

[15] The County in its motion to dismiss cites to Mr. Armbrester's deposition testimony from *Armbrester I*, in which Mr. Armbrester testified that the County ultimately moved him to his own individual cell and out of general population. County MTD Ex. A – ECF No. 38-1 at 12–13. The court cannot take notice of a deposition for the truth of statements made therein on a motion to dismiss. (At the August 23, 2018 hearing, the court asked the parties if it should convert the County's motion to dismiss into a motion for summary judgment, but both parties said they wanted the court to decide it as a motion to dismiss.) But the court can take notice of the fact that Mr. Armbrester does not plead in his SAC that he was held at length in general population after he asked not to be placed there, which is consistent with his putative deposition testimony that he was held mainly in an individual cell.

## CONCLUSION

For the foregoing reasons, the court grants the County's motion to dismiss.

Mr. Armbrester may file an amended complaint within 21 days of the date of this order. If he does not do so, the court will direct the clerk of court to close this case.

**IT IS SO ORDERED.**

Dated: August 30, 2018

_____

LAUREL BEELER
United States Magistrate Judge